H. C. BASCOM, APPELLEE, V. J. F. ZEDIKER, APPELLANT, ET AL.

FILED MAY 6, 1896. No. 6526.

Conflict of Laws: CONTRACTS: FORUM OF JURISDICTION. Suit on a promissory note. Defense: Consideration for the note, a loan of money made by appellee to appellants at a usurious rate of interest, and that the contract was made in the state of New York and void under the laws thereof. Evidence set out at length in the opinion and *held* to sustain the finding of the district court that the contract between the parties was made in, and governed by the laws of, the state of Nebraska.

APPEAL from the district court of Lancaster county. Heard below before HALL, J.

The facts are stated by the commissioner.

*C. C. Flansburg* and *Abbott & Caldwell*, for appellant:

The contract is governed by the laws of New York. (*Andrews v. Pond*, 13 Pet. [U. S.], 65; *Gay v. Rainey*, 89 Ill., 221; *Freese v. Brownwell*, 35 N. J. Law, 286; *Campbell v. Nichols*, 33 N. J. Law, 81; *Akers v. Demond*, 103 Mass., 318; *Little v. Rogers*, 1 Met. [Mass.], 108; *Clark v. Sisson*, 22 N. Y., 312; *Buchanan v. Drovers Nat. Bank*, 55 Fed. Rep., 223; *Milliken v. Pratt*, 125 Mass., 374; *Cook v. Moffatt*, 5 How. [U. S.], 295; *Bell v. Packard*, 69 Me., 106; *Hyde v. Goodnow*, 3 Comst. [N. Y.], 270.)

*John M. Stewart, contra.*

RAGAN, C.

H. Clay Bascom sued James F. Zediker and others in equity in the district court of Lancaster county to recover

a sum of money which he alleged was due to him on a promissory note executed and delivered to him by Zediker and others, and in that action sought to have the amount found due him on the note declared a lien upon certain bank stock pledged as security for the payment of the note. Zediker admitted the execution and delivery of the note, but defended on two grounds: (1) That the consideration for the note was a loan of money made to him by Bascom; that the contract was made in the state of New York, governed and controlled by the laws of that state, and was usurious and void; and (2) that if the contract was governed by the laws of the state of Nebraska it was usurious. The district court found and decreed that the contract was made in and governed by the laws of Nebraska and that the note was usurious, and rendered a decree accordingly, from which Zediker has appealed.

1. It is conceded by all parties that the note in suit is usurious under the laws of the state of Nebraska, and that if the contract between Zediker and Bascom was made in, and is to be governed by the laws of, the state of Nebraska, the decree of the district court must be affirmed. It is also conceded that if the contract between Zediker and Bascom was made in the state of New York and is to be governed by the laws of that state, the note in suit is void, and that the decree appealed from must be reversed.

2. On the trial Zediker testified that in the summer of 1888 he was a resident and citizen of the state of Nebraska, and that Bascom was a resident and citizen of the state of New York; that during this summer he was in Troy, New York, saw Mr. Bascom and entered into an agreement with him in and by which Bascom agreed to lend him $10,000, for which Zediker was to execute his promissory note drawing interest at the rate of ten per cent per annum, and to pay Bascom a bonus of $100 for making this loan. On the 11th day of August, 1888, Zediker being in Grand Island, Nebraska, wrote to Bas-

com at Troy, New York, a letter as follows: "I have struck a chance to buy $10,000 of our stock in First National Bank at prices to suit me, and I want to borrow $10,000 for a year at the best rate I can get, likely nine per cent, but I want the money. I can give my own and wife's name and two or three others and then put up the $10,000 stock of said bank as additional security. Can you make me the loan or negotiate such a loan? Will give you $100 for trouble of negotiating it. I want the matter in shape so I can pay for stock by the 30th inst. sure. Money can be remitted to our bank or its cashier, with instructions, or you could have a bank there authorize First National of Franklin, Nebraska, to draw for $———, with note and collateral attached as described, etc. Write me here at Grand Island. I will be here until the last of the month." On the 25th day of August, 1888, Bascom's secretary at Troy, New York, wrote to Zediker in answer a letter as follows: "Mr. Bascom is out of the city just now, but he has instructed me to say that if you will give your and wife's name and two good indorsers, and put up the stock and pay a rate of ten per cent per annum and $100 bonus, he will get the money for you. He will be at home when your answer arrives if it is on receipt of this." At Franklin, Nebraska, on the 3d day of September, 1888, Zediker replied to Bascom's letter as follows: "Yours of August 25th came to me at Grand Island, and I came home immediately to arrange for the stock I expected to buy. One man has raised on his price, but we have finally come to terms. Others I expected to arrange with this week. Think I will be ready to send you the note by the end of this week. Want to make best deals I can, and so will take a few days to complete the work. I am depending on the money. Your rate is strong, but I shall not lose even at that. Bank is in fine condition and I propose to control it. So I depend on you for the money at rates offered and will give you two good indorsers and $10,000 national bank stock for collateral for the $10,000 loan at

ten per cent and pay you $100 bonus for your trouble."
On the same day, from the same place, Zediker wrote to
Bascom another letter as follows: "Herein find promis-
sory note for $10,000 at ten per cent interest, on one
year's time, signed by myself and ———.   *   *   *   The
stock will have to be turned over to us and rewritten and
then indorsed in blank and sent to you, so won't you
please send the money to the cashier of this bank—First
National—instructing him to turn over money to me as
fast as I hand over to him stock in his said bank $1,000
for $1,000 par value, you to have the full $10,000 of stock
for the $9,900 cash, to be held by you as collateral.   *   *
Date the note the day you send me the money."   Bascom
in due course of mail received the note sent to him by
Zediker on the 3d of September, and on the 13th of Sep-
tember filled in that date in the note and transmitted to
the cashier of the First National Bank of Franklin $9,900
to be paid to Zediker on his delivering to said cashier for
Bascom $10,000 of the capital stock of the First National
Bank of Franklin, Nebraska.   The stock was so delivered
by Zediker to the cashier and the money paid over.   The
note sent was payable to Bascom in Troy, New York.

In *Sheldon v. Haxtun*, 91 N. Y., 124, Haxtun resided in
the state of Illinois and Sheldon in the state of New York.
Haxtun collected certain moneys in Illinois which be-
longed to Sheldon, and by an agreement between them,
instead of remitting the money, he sent his own notes to
Sheldon for the amount of money which he had collected
belonging to him.   These notes were dated at his place
of residence in Illinois and drew ten per cent interest.
This at the time was a lawful rate in the state of Illinois,
but was unlawful in the state of New York.   In an ac-
tion upon these notes it was held that their validity was
to be determined by the law of Illinois; that as they
were valid there they were valid in New York.   An-
drews, C. J., said: "The transaction was in substance a
loan by   *   *   *   a resident of New York,   *   *   *
to a resident of Illinois, in the latter state, of funds there

held by and belonging to the former, at a rate of interest lawful in Illinois. If the plaintiff's intestate had gone in person to Illinois and collected the notes and then lent the money to the defendant [Sheldon] at ten per cent interest, there could, we apprehend, be no question as to the lawfulness of the transaction, although the notes were payable in this state.   *   *   *   Nor could it, we conceive, alter the case if the negotiation for the loan was made in this state and afterward consummated and the transaction completed in Illinois, the transaction being *bona fide* and there being no intent thereby to evade the laws of this state. The dealing, for the purpose of determining the question of usury, would be assigned to the place where the funds were and where the loan was consummated. What occurred between the parties was equivalent to the plaintiff's intestate [Sheldon] going to Illinois and there making the several loans to the defendant. The funds were there in possession of the defendant as agent. He was permitted to retain them and became a debtor for the amount. Upon depositing the notes in the mail the transaction was complete. The money became the defendant's and the notes the property of the intestate. The defendant became the borrower of the proceeds of the note collected by him."

In *Akers v. Demond*, 103 Mass., 318, two bills of exchange were drawn in New York by one Reed upon Demond, a resident of Boston. The bills were payable in Boston and indorsed by a third party in New York and then transmitted by Reed to Boston, where they were accepted by Demond, who returned them to Reed in New York, where they were sold at a rate of interest usurious both in New York and in Massachusetts. In a suit on these bills of exchange Demond interposed the defense that they were made in and governed by the laws of the state of New York and were usurious and void. The court sustained this defense, saying: "The fact that the bills now in suit were accepted in Boston and were payable there does not exempt them from this

operation of the laws of New York. They were mere 'nude pacts,' with no legal validity or force as contracts until a consideration was paid. The only consideration ever paid was the usurious loan made by these plaintiffs in New York. That, then, was the legal inception of the alleged contracts."

In *Milliken v. Pratt*, 125 Mass., 374, it was held: "A contract of guaranty signed in this commonwealth and sent by mail to another state, and assented to and acted on there, for the price of goods sold there, is made in the latter state."

In *McIntyre v. Parks*, 3 Met. [Mass.], 207, it was held: "Where a proposal to purchase goods is made by letter sent to another state and is there assented to, the contract of sale is made in that state."

In *Gay v. Rainey*, 89 Ill., 221, a note was executed by parties in Illinois and sent to the payee in Louisiana, where he indorsed the same and returned it by mail to the makers to be negotiated by them for their accommodation. The makers negotiated and delivered the note in Illinois. It was held that the contract of indorsement, though written in Louisiana, was made in Illinois and made at the time of the delivery of the note when negotiated by the makers. In this case it was further held that the place where a contract is made depends not upon the place where it is actually written, signed, or dated, but upon the place where it is delivered as consummating the bargain. To the same effect see *Buchanan v. Drovers Nat. Bank of Chicago*, 55 Fed. Rep., 223; *Western Transportation & Coal Co. v. Kilderhouse*, 87 N. Y., 430; *Merchant v. Chapman*, 4 Allen [Mass.], 362; *Sands v. Smith*, 1 Neb., 108; *Hosford v. Nichols*, 1 Paige Ch. [N. Y.], 220.

Applying these authorities to the facts of the case at bar, we reach the conclusion that the contract existing between Zediker and Bascom, out of which the suit in controversy grew, was made in, and is to be governed by the laws of, the state of Nebraska, and not the state of New York. A contract is made when it is finished, com-

pleted, consummated. In the case at bar the loan of Bascom to Zediker was not completed until the money was paid over to him by the cashier of the First National Bank at Franklin. By agreement between the parties Bascom was to remit, and did remit, the money to the cashier of the First National Bank of Franklin. He was to pay over the money to Zediker on the latter's delivering to him for Bascom certain of the capital stock of the bank. The contract, then, between Bascom and Zediker was consummated in Franklin, Nebraska, when the $10,000 of stock was delivered to the cashier and the $9,900 money paid over by him to Zediker. The decree of the district court is right and is

AFFIRMED.