JACOB K. MAY ET AL. V. FIRST NATIONAL BANK OF MENDOTA, ILLINOIS.

FILED JUNE 22, 1905. No. 13,881.

1. Notes: TRANSFER AFTER MATURITY. An assignee of the payee of negotiable paper after maturity takes the same subject to any defense to which it would have been liable in the hands of his assignor.

2. Chattel Mortgage: ASSIGNMENT: ESTOPPEL. If an assignor of a chattel mortgage given to secure a promissory note which is past due at the time of the assignment has, prior thereto, become estopped by his own conduct from enforcing it against an innocent subsequent mortgage for value, his assignee is also estopped.

3. Verdict: EVIDENCE. Upon an examination of the record it is found that the verdict and judgment of the district court are such as the evidence was alone sufficient to support.

ERROR to the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*McCoy & Olmsted* and *Hamer & Hamer,* for plaintiffs in error.

*C. A. Robinson* and *H. M. Sinclair, contra.*

AMES, C.

On February 18, 1901, F. J. Greer executed to Shelley-Rogers Company a mortgage on certain cattle owned by him to secure payment of his promissory note for $8,020.96, payable October 24, then next following. The mortgage was made duly of record, and the note at its maturity, augmented by accrued interest, was extended so as to become due January 5, 1902. In December, before the maturity of the note as extended, a larger part of the cattle were shipped to the mortgagee, which was a live stock commission dealer at South Omaha, and sold, and the proceeds of the sale, amounting to $5,080.44, applied toward payment of this and other indebtedness, leaving an unsatisfied balance of $4,495.35. For this residue the mortgagee was desirous of obtaining payment or marketable paper, but it was agreed between the parties that the unsold residue of the cattle would not be adequate security for a sum exceeding $2,200. A mortgage upon the remnant of the herd to secure a note for that sum, and containing the usual covenants that the property described in it belonged to the mortgagor, free from prior liens, etc., was executed and delivered by Greer to the commission firm. There was thus left unprovided for, of the old indebtedness, $2,295.35, which was paid in part by a shipment of hogs, and afterwards further reduced so as to leave a residue of $1,742.53, which was put into a new note secured by a mortgage on real estate. Shortly after the settlement, the defendant in error became in the usual course of business in good faith, and for value, before maturity, the indorsee and owner of the $2,200 note and mortgage, which have never been paid, but which have been several times renewed. The last renewal was by a

new note and mortgage corresponding in all respects with its predecessors, except augmentation by accrued interest, but executed February 20, 1903, and filed for record six days later. The note for $1,742.53 was executed October 1, 1902, long subsequently to the execution and sale of the note for $2,200, and on the day after its execution was sold to the plaintiffs in error. Between the promissory part of the instrument and the signature is a recital upon a printed blank to the effect that its payment is secured by collateral consisting of the first mentioned note of $8,020.96 and the mortgage given as security for the latter. Greer, the maker, testified without contradiction that the blanks in this recital were not filled at the time he executed and delivered the note, nor afterwards with his consent or knowledge. In October, 1903, the defendant in error took possession of the cattle described in its mortgage, which were taken from it under an order of replevin in this action. There was a trial resulting in a verdict and judgment for the defendant below, to reverse which this proceeding is prosecuted. None of the above recited facts is in dispute, and there are no others involved in the litigation, so that the sole question is, to whom does the law award the title and right of possession of the animals taken in replevin?

We think the answer should be in favor of the defendant. The plaintiff's claim arises solely out of the recitals in the note purchased by it, which could be effectual, if at all, merely as a pledge of a chose in action. Now, besides the uncontradicted testimony of the maker, Greer, that these recitals were not made or authorized by him, and are therefore nugatory, the instrument to which they refer did not, at the time they appear as having been made, purport to be such a document as they describe. It was by its terms nearly a year and a half past due, and bore no evidence of being secured by mortgage, and it carried memoranda on its back indicating that three payments had been made upon it, aggregating the sum of $5,460.34. Certainly a more discredited piece of paper, or one less

entitled to the favorable presumptions of the law merchant, would be difficult to imagine. Its assignees cannot pretend to stand in any better light than their assignor would have done if the transfer had not been made. What was the position of the payee, Shelley-Rogers Company? It had taken and sold to an innocent purchaser for value a mortgage upon a part of the identical cattle described in the first mortgage, which recited that the animals were in the "undisputed possession (of the mortgagor), free from all liens and incumbrances," which is equivalent to a recital, or at least representation, that the former mortgage had been satisfied and discharged. Whether with or without this recital the jury would have been fully justified in finding that, and we think would not have been excusable for finding otherwise than that, as they doubtless did find, the transaction with reference to the note and mortgage for $8,020.96 amounted to, and was intended by the parties as, a satisfaction, payment and discharge of those instruments; and with this recital in an instrument in the hands of an innocent purchaser for value, there seems to us to be no room for doubt that both mortgagor and mortgagee were, and are, estopped to deny that such was not the case. As a proposition of law it would be absurd to say that the plaintiffs, when they acquired the instrument in controversy, were not put upon their inquiry with respect to its validity and status. If they had made inquiry of Greer, the maker, to whom their attention was immediately directed, they would have learned without difficulty or delay that their supposed collateral had been fully satisfied, in part by the security held by the defendant, and as to the residue by payments in money and by the note purchased by plaintiffs, which was secured by a mortgage on real estate; and, in addition thereto, that the property described in the old mortgage had been disposed of, all of it, with the consent and concurrence of both mortgagor and mortgagee, a larger part by sale and the remainder by a new mortgage securing a negotiable promissory note. It can hardly be necessary

to cite authorities in support of so plain and indisputable a conclusion. The rights of the defendant are even superior to those of the mortgagor; but that the latter, if he had not made or authorized the disputed recitals, as the uncontradicted evidence is that he did not, could successfully defend against the so-called collateral note and mortgage, has been so often decided by this and other courts in similar cases that the rule of law has become axiomatic. *Roberson v. Reiter,* 38 Neb. 198; *Owen v. Evans,* 134 N. Y. 514, 31 N. E. 999. As respects this recital, counsel seek to evade the force of the uncontradicted testimony by Greer by citing *Humphrey Hardware Co. v. Herrick,* 72 Neb. 878, to the effect that the maker of a note on a printed form, who delivers the instrument with unfilled blanks, in some circumstances impliedly authorizes the filling of the blanks after such delivery. But the case is not in point. In this instance the filling of the blanks, or the recital itself, was not essential to the completion of the contract as an obligation to pay a specified sum of money at all events on a day certain. The instrument was to that extent perfect. If the blanks had been properly filled, the recital would not have constituted, but would have been evidence of, a contract of pledge of the prior note as collateral security for the payment of the later one. That contract, if it was made, was not dependent upon the recital for its terms, validity or certainty. The blank spaces, if they were left unfilled, cannot be said to have implied authority to fill them with a description of the prior note, rather than of any other instrument, unless a previous contract of pledge, of which there is no evidence, had been entered into. In other words, it cannot be presumed that the delivery of the note with unfilled blanks carried with it implied authority to the payee to insert, at its option, the description of any obligation or chose in action of the maker it happened to have in its possession. In short, the recital in the instrument is of no significance at all unless it was made by the payor, or with his previous consent or subsequent ratification. Such a pledge as the al-

leged recital purports to evidence would have been inconsistent with the circumstances and the relations of the parties as above set forth, and could not have been made without an intent on the part of both maker and payee to perpetrate a fraud upon innocent third persons. For such conduct the former had no known or conjecturable motive. By so doing he could have gained nothing, and would have been likely to subject himself to embarrassment and loss by uttering two obligations for a single debt. It is far less likely that he did so than that he omitted to take up and destroy the old note through carelessness or inadvertence. We think that under the evidence a verdict by the jury that the recital was made by or with the consent of Greer would have lacked sufficient support, and could not have been upheld. But, if it were otherwise, if both the pledge and the recital were made at the time the plaintiff's note was executed, it could not be availed of in the hands of an assignee after maturity to cut off the prior equity of an innocent purchaser for value who had rightfully relied upon the recitals in his own instrument.

Exceptions were taken to several instructions, but as we are of opinion that the verdict returned is the only one that the evidence would support, we have not felt called upon to discuss them, but recommend that the judgment of the district court be affirmed.

LETTON and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.

SEDGWICK, J., not sitting.