MAGGIE MCELROY, APPELLANT, v. METROPOLITAN LIFE INSURANCE COMPANY, APPELLEE.

FILED JUNE 25, 1909. NO. 15,609.

1. **Insurance: PLACE OF CONTRACT.** Where the parties to an insurance contract are in different jurisdictions, the place where the last act is done which is necessary to the validity of the contract is the place where the contract is entered into.

2. ———: **LOCAL CONTRACTS: LAWS OF FOREIGN STATES.** Insurance business transacted in this state by New York insurance companies without any provision that the New York laws shall govern is not subject to the provision of the New York statute requiring a notice to be mailed to the policy holder in that state as a condition of forfeiture for nonpayment of premiums.

3. ———: **PREMIUMS: AUTHORITY OF AGENT.** The agent of an insurance company cannot by oral contract with the assured waive the express terms of the policy and extend the time of payment of a premium, when the policy provides that none of its terms can be varied or modified, nor any forfeiture waived nor premiums in arrears received, except by agreement in writing signed by the president, vice-president, secretary or assistant secretary.

APPEAL from the district court for Cass county: PAUL JESSEN, JUDGE. *Affirmed.*

*A. N. Sullivan,* for appellant.

*J. B. Strode, contra.*

CALKINS, C.

This was an action upon a policy of life insurance issued by the defendant upon the life of one Julia Mc-

Elroy, in which policy the plaintiff was named as beneficiary. The defense was that the policy had been forfeited for non-payment of a semiannual premium which fell due December 28, 1906, and remained unpaid at the time of the death of the assured, which took place February 27, 1907. There was a trial to a jury, upon which the court directed a verdict for the defendant, and from a judgment entered thereon the plaintiff appeals.

1. It is conceded that, if the contract is to be considered as made in and construed by the laws of this state, the policy was by its express terms forfeited by the failure to pay the premium in question, unless the time of such payment was extended or such forfeiture waived. The defendant is a New York corporation, and there was in force in that state at the time of the issuance of the policy in question a statute regulating the business of life insurance, which, among other things, provided: "No life insurance company doing business in this state shall within one year after the default in payment of any premium, instalment or interest declare forfeited or lapsed any policy hereafter issued * * * unless a written or printed notice stating the amount of such premium * * * due on such policy, the place where it shall be paid, and the person to whom the same is payable, shall have been duly addressed and mailed to the person whose life is insured * * * at his or her last known post office address in this state. * * * The notice shall also state that, unless such premium * * * shall be paid * * * by or before the day it falls due, the policy and all payments thereon will become forfeited and void." There was an attempt to give the notice required by this statute, but it is claimed it was so imperfect as not to amount to a compliance with the above quoted provisions. The question is therefore presented whether the rights of the parties under the policy sued on are to be determined by the laws of this state or those of New York. It is a general principle that, if the parties to an insurance contract are in different jurisdic-

tions, the place where the last act is done which is necessary to give validity to the contract is the place where the contract is entered into. *Antes v. State Ins. Co.*, 61 Neb. 55; *Bascom v. Zediker*, 48 Neb. 380; *Mutual Life Ins. Co. v. Cohen,* 179 U. S. 262. In the body of the policy sued on it is provided that no obligation is assumed by the company until the first premium has been paid, nor unless upon the delivery of the policy the assured is living and in sound health; and in the application, which is a part of the policy, there is inserted the stipulation: "I further agree that the company shall incur no liability under this application until it has been received, approved, and the policy issued and delivered, and the premium has actually been paid to and accepted by the company during my lifetime and while I am in good health." In this case the policy was sent from the company's home office in New York to its agent in Nebraska, who delivered the same to the assured upon the payment by her of the first premium, at Plattsmouth, Nebraska, on the 28th day of July, 1905. Applying the principle above quoted to these facts, the contract of insurance in question must be considered a Nebraska, and not a New York, contract.

2. The effect of this statute upon policies of insurance issued by New York companies upon the lives of persons residing in other jurisdictions has been the subject of consideration in the courts of California, Washington, Texas, and the supreme court of the United States. *Harrigan v. Home Life Ins. Co.*, 128 Cal. 531; *Griesemer v. Mutual Life Ins. Co.*, 10 Wash. 202; *Metropolitan Life Ins. Co. v. Bradley*, 98 Tex. 230, 82 S. W. 1031; *Mutual Life Ins. Co. v. Cohen*, 179 U. S. 262; *Mutual Life Ins. Co. v. Hill*, 193 U. S. 551. In the California case above referred to, which was decided in August, 1899, it was held that the provision of the New York statute prevented the forfeiture of a policy issued under such circumstances without the notice therein provided for. In each of the other jurisdictions an opposite conclusion was reached.

In *Mutual Life Ins. Co. v. Cohen, supra,* there was a very full consideration of the subject in an opinion by Brewer, J., with the reasoning of which we are satisfied. It does not appear that this question has been before the court of appeals of New York; but the supreme court has lately had it under consideration in a case where a policy was issued and delivered in the state of New York to a person who resided in Chicago, and had no post office address in New York. *Napier v. Bankers Life Ins. Co.,* 100 N. Y. Supp. 1072. The conclusion there arrived at was that the provisions of the statute only applied to policies issued to persons residing and having a post office address in the state of New York. Attention is directed to the use of the words "in this state," which it appears were recently added to the statute by amendment, and it is urged that the use of these words tends to show that the intention of the legislative act was to confine the provisions of this section to policies issued within that state. We are satisfied that the forfeiture must be governed by the law as it exists in Nebraska; and, while it would be well within the jurisdiction of the lawmaking power of this state to enact a similar statute concerning policies upon the lives of the residents thereof, we must hold that the failure to pay the semi-annual premium worked, in accord with the terms of the policy, a forfeiture of all claims against the company.

3. It is contended by the plaintiff that the evidence established a course of dealing between the agents of the company and the assured which justified the assured in waiting until the agent called at the house to collect the premium. It appears that the company issued in this locality a kind of policy called the industrial, in amounts of $50 to $200, upon which the premiums were paid by weekly instalments. By the express terms of these industrial policies the agents of the company were required to go to the home of the assured and collect the premium, and the evidence establishes that the custom was not to strictly enforce the rule requiring the premiums the day

they became due, the assistant superintendent having authority to extend the time, provided that he saw the assured personally and found him in good health. No such custom nor practice was established in reference to the class of policies sued upon, and the policy under consideration contained the provision that none of its terms could be varied or modified nor any forfeiture waived or premiums in arrears received, except by agreement in writing signed by either the president, vice-president, secretary or assistant secretary, whose authority for that purpose was not to be delegated. The evidence shows that all the premiums paid on the policy were paid to agents of the defendant by Frank McElroy, the father of the assured, at his place of business in Plattsmouth. Only two premiums were ever paid, and one of these was that paid at the time the policy was delivered. There was no promise on the part of the agent to waive the forfeiture or postpone the payment, unless the same might be inferred from the testimony of Frank McElroy, which shows that in the latter part of January or first of February he had a conversation with Mr. Davies, the agent of the defendant, in which he said, when asked what Mr. Davies' exact words were: "The way I understood it when I spoke to him about it, he said it would be all right to keep the other money and give it to him together. Afterwards he came to the shop, and said he didn't know about that, and he asked me for my daughter's address, and I told him I didn't have it. I told him then if he insisted on the money to go up and see my wife, as it was not any benefit to me anyhow. She had money." It appears that it was the practice of the company to send receipts to its local agents before a premium became due, and that the agent was authorized to deliver such receipt upon payment of the premium at any time within 30 days of the date upon which the same had become due. In case of nonpayment of the premium within that period, the agent was required to immediately return the receipt to the home office, and was without any authority to ac-

cept the premium thereafter without further instructions. The date of the above conversation is not very definite, but we will assume that it was before the expiration of the 30-day period. The evidence does not seem to us sufficient to sustain a finding that the agent did agree to give time beyond the expiration of this period for the payment of the premium. Whether he did or not, it is clear that he had no authority to make any such agreement. We think the restriction upon the power of agents to waive the forfeiture of the policy is binding. *Hartford Fire Ins. Co. v. Landfare,* 63 Neb. 559.

The witness McElroy relates another conversation with the agent, Mr. Davies, as follows: "The next time I seen him was about the 18th or 19th. That was after getting a dispatch from Chicago calling me there on account of my daughter's sickness. I met him there, and, 'Now,' I says, 'if you have got that receipt, I have got the money in my pocket,' and he said, 'No,' but he would get my receipt the next week." This conversation was after the agent had returned to the home office the receipt, at the end of the period of 30 days, and when he neither had nor pretended to have authority to accept the payment of the premium. The offer of McElroy to pay at this time could have no effect unless the time of payment of the premium had been extended by the former conversation. As we have seen, the agent had no authority to make that extension. The district court did not therefore err in refusing to submit this question to the jury and in directing a verdict for the defendant.

We therefore recommend that the judgment of the district court be affirmed.

DUFFIE, EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.