# JAMES N. TRUE v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

June 12, 1914.

Nos. 18,618—(138).

**Contract — forfeiture of instalments paid.**

1. A land contract providing for payments in instalments may provide that upon default all payments previously made shall be forfeited. Such provision is valid.

**Land contract — notice of cancelation.**

2. In the absence of a statute, the parties to a land contract may, in their contract, provide for the character of the notice of cancelation required to terminate it. A stipulation in a land contract that notice of cancelation should be directed to the vendee at a post office named, "which shall constitute a good and sufficient notice and service thereof," is valid.

**Same — what law governs.**

3. A contract to sell lands in Washington may be a Minnesota contract and, if so, the statutes of Minnesota as to cancelation of land contracts must be complied with.

**Same.**

4. Where the land is in Washington, the negotiations conducted in Washington, the contracts in writing and delivered in Washington, and they provide for payments to be made in Washington, the contracts are Washington contracts and are governed by the laws of that state as to their manner of performance, termination and discharge.

**Same.**

5. The fact that an application made in Washington to purchase land in that state provided that it was subject to the approval of the land commissioner of defendant in St. Paul, did not make the contract a Minnesota contract where the application further provided for a formal written contract to be executed in duplicate and mutually delivered. Where a contract consists of an offer made in one place and an acceptance made in another, the place of acceptance is the *locus* of the contract, but where a formal written contract is contemplated, which is to become effective only upon delivery,

[1] Reported in 147 N. W. 948.

the contract is made where it is delivered, although it may have been signed elsewhere.

**Incumbrance on land contracted to be sold.**

6. Where land is sold, the price to be paid in instalments, and a deed is to be delivered upon payment of the last instalment, the vendor undertakes to furnish a clear title on payment of the last instalment. It is not a breach of contract that the land was incumbered when the contract was made. In the absence of fraud or of insolvency of the vendor, the existence of such an encumbrance does not bar the vendor from recovering instalments prior to the last, nor from canceling the contract for nonpayment of such instalment.

**Waiver of prompt payment.**

7. The acceptance of one instalment payment after it becomes due does not, as a matter of law, waive prompt payment of subsequent instalments.

Action in the district court for St. Louis county to recover $2,090.59. The answer enumerated the contracts between the parties; alleged that plaintiff made default in the payments thereunder; that defendant exercised the option given to it to declare each of the contracts void and in the years 1903 and 1905 notified the plaintiff of such cancelation; that the contracts were executed and delivered in the state of Washington and provided they should be performed in that state; and set up the Minnesota statute of limitations as a defense. The reply, among other matters, alleged that after the first payment by plaintiff, he discovered defendant did not have an unincumbered title to the lands as represented, but the lands were embraced in and part of a huge mortgage securing millions of dollars of indebtedness; denied that the contracts were Washington contracts and alleged they were Minnesota contracts and governed solely by the laws of Minnesota.

The case was tried before Fesler, J., who made findings and ordered judgment in favor of defendant. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

*James N. True,* pro se.

*C. W. Bunn* and *Emerson Hadley,* for respondent.

HALLAM, J.

In 1902 defendant sold to plaintiff a number of tracts of land in the state of Washington. Separate contracts were given, each conveying a separate tract. In each case one-sixth of the purchase price was paid down and a contract given, providing for payment of the balance in five annual instalments. A second payment was made in 1903 on one contract. Aside from this, no payment, except the initial payment, was ever made. After default, defendant undertook to cancel each of these contracts, and thereafter sold the land to other purchasers. After many years, in May, 1911, plaintiff made offer of performance, which was refused on the ground that the contracts had been forfeited and canceled. Plaintiff contends that the cancelation of these contracts was unlawful and that the contracts remain in force, that defendant has refused to perform the contracts on its part and that, by reason of its sale of the lands to other parties, defendant has disabled itself from performing, and he accordingly sues to recover the money he paid defendant. The trial court found for defendant and plaintiff appeals.

1. Time was of the essence of the contracts. The contracts each provided that, in case of default in payment of an instalment when due, the contract should, at the option of defendant, be null and void and all payments made thereon should be and remain the property of defendant. This provision was valid and binding on the parties. Reddish v. Smith, 10 Wash. 178, 38 Pac. 1003, 45 Am. St. 781; Sleeper v. Bragdon, 45 Wash. 562, 88 Pac. 1036; Grant v. Munch, 54 Minn. 111, 55 N. W. 902. It follows that, if the contracts were lawfully canceled for plaintiff's default, then plaintiff has no right to recover the payments made.

2. We are of the opinion that the contracts were lawfully canceled.

There is no statute of Washington regulating the cancelation of land contracts. Under the laws of that state, where time is made of the essence of a land contract, the vendor may declare a forfeiture of the contract for nonpayment of any instalment of the purchase price when due. Sleeper v. Bragdon, 45 Wash. 562, 88 Pac. 1036; Douglas v. Hanbury, 56 Wash. 63, 104 Pac. 1110, 134 Am. St. 1096.

This is what defendant undertook to do. The notices of cancelation were served in the manner provided by the contracts. Each contract provided that it might be terminated for any breach thereof by notice of cancelation addressed to plaintiff "directed to the post office named below, and deposited in a United States post office, which shall constitute a good and sufficient notice and service thereof." The "post office named below" was Spokane, Washington. After the default of payment on the part of plaintiff, the defendant gave notice of cancelation as here required. Defendant did in fact do more than this, for, when notices directed to plaintiff at Spokane were returned uncalled for, it sent additional notices to other addresses, where it was believed plaintiff could be found, and these were never returned. In the absence of a statute prescribing a different method of service, the method provided by the contract is sufficient. Plaintiff saw fit to stipulate in his contracts that the mailing of a notice of cancelation directed to him at Spokane, Washington, should be sufficient service of such notice, and this provision of his contracts is binding upon him. Kerns v. McKean, 65 Cal. 411, 416, 4 Pac. 404; Schwab v. Baremore, 95 Minn. 295, 104 N. W. 10. The notice of termination of these contracts was sufficient under the laws of Washington.

3. The mode of service of the notices of cancelation was not sufficient to terminate a land contract under the statutes of Minnesota (Laws 1897, p. 431, c. 223, G. S. 1913, § 8081). Plaintiff contends that these contracts were Minnesota contracts, and that they could be canceled only by compliance with the Minnesota laws. The land was located in the state of Washington. Notwithstanding this fact, the contracts might be Minnesota contracts, and, if so, they could be canceled only by compliance with the laws of Minnesota. Finnes v. Selover, Bates & Co. 102 Minn. 334, 113 N. W. 883.

4. We are of the opinion, however, that the contracts were Washington contracts. As stated, the land was located in that state. The negotiations were all had in that state. The contracts were delivered in that state, and they provided for payments to be made at the office of defendant's assistant land commissioner, which office was at Tacoma in that state. Beyond question these facts made the con-

tracts Washington contracts, to be governed by the laws of that state as to their manner of performance, termination and discharge.

5. The applications made by plaintiff for the purchase of these lands contain the language: All applications are "received subject to acceptance by the western land agent" (at Tacoma) "and approval of the land commissioner." The office of the land commissioner was at St. Paul. It is contended that this provision for approval by the land commissioner made the contract a Minnesota contract. It is true that, where a contract consists of an offer made in one place and an acceptance made in another, the place of acceptance is the *locus* of the contract. (M'Intyre v. Parks, 3 Metc. [Mass.] 207), and, where an agent takes applications subject to approval of the principal or of another agent, the contract is made at the place of such approval. Shuenfeldt v. Junkermann, (C. C.) 20 Fed. 357; 9 Cyc. 670. But these principles are not applicable to a case like this. The applications in this case further provided for formal written contracts to be made and executed in duplicate, and provided for their mutual delivery. These contracts became effective only upon delivery. They were delivered in Washington. Where the parties enter into written contracts, which become effective upon delivery, the place where the contract is delivered is the place where it is made. Walsh v. Selover, Bates & Co. 109 Minn. 136, 138, 123 N. W. 291; Butler v. Myer, 17 Ind. 77; Hill v. Chase, 143 Mass. 129, 9 N. E. 30; John A. Tolman & Co. v. Reed, 115 Mich. 71, 72 N. W. 1104; Bascom v. Zediker, 48 Neb. 380, 67 N. W. 148; Varick's Exr. v. Crane, 4 N. J. Eq. 128, 24 Atl. 620, 30 Am. St. 797; Baum v. Birchall, 150 Pa. St. 164, 24 Atl. 620, 30 Am. St. 797.

These contracts were executed in behalf of defendant by its assistant land commissioner. This official had an office at the principal offices of the company in St. Paul, Minnesota, and he also had an office at Tacoma, Washington. It does not appear where he in fact executed the contracts. But this is immaterial. For the reason that the contracts were delivered in Washington they were Washington contracts, although they may have been signed by one of the parties

in another state. Walsh v. Selover, Bates & Co. 109 Minn. 136, 138, 123 N. W. 291.

The contracts being Washington contracts, they were lawfully canceled, and by such cancelation all rights of plaintiff were terminated, and all right to recover moneys paid by him lost.

It follows that defendant had a right, after such cancelation, to sell the lands and to refuse to further recognize the contracts, and their conduct in so doing gave no rights to plaintiff.

6. Plaintiff offered testimony tending to show that, at the time this contract was made, the lands were incumbered by a blanket mortgage, or trust deed. He urges that by reason thereof defendant was not in a position to perform its contracts, and consequently could not cancel them for default on the part of plaintiff.

Where land is sold, the price to be paid in instalments, and a deed to be delivered upon payment of the last instalment, the obligation of the vendor is to furnish a clear title at the time when the deed is due to be delivered. He is not in default until that time. It is not necessary, in the absence of fraud, that his title should be clear at the time the contract was made, and the existence of an incumbrance is no defense to an action to recover an instalment previous to the last one. Duluth Loan & Land Co. v. Klovdahl, 55 Minn. 341, 56 N. W. 1119; Loveridge v. Coles, 72 Minn. 57, 74 N. W. 1109. The vendor may enforce any remedy given to him under the contract, including the right of cancelation, notwithstanding such incumbrance. If the grantors were shown to be insolvent, different questions would arise.

7. Plaintiff contends that defendant waived its right to declare these contracts forfeited by accepting a second payment on one of them some three months after it became due. Clearly this was not a waiver as a matter of law. Cash v. Meisenheimer, 53 Wash. 576, 102 Pac. 429; Garvey v. Barkley, 56 Wash. 24, 104 Pac. 1108; Lent v. Burlington & M. R. R. Co. 11 Neb. 201, 8 N. W. 431.

We have carefully considered all of plaintiff's assignments of error. We think we have in this opinion covered the subject matter of all of them, though not in the order presented. We find none of them well taken; and the judgment appealed from is affirmed.