FIRST NATIONAL BANK IN ALEXANDRIA, SOUTH DAKOTA, APPELLEE, V. L. H. ERNST, DEFENDANT: RUA F. ERNST, APPELLANT.

FILED MAY 18, 1928. No. 25969.

*F. C. Radke* and *Magdalene Craft Radke,* for appellant.

*Danforth & Seacat, Clare B. Davey* and *S. P. Davidson,* contra. .

Heard before GOSS, C. J., DEAN, GOOD, THOMPSON and HOWELL, JJ., and CLEMENTS and REDICK, District Judges.

HOWELL, J.

Rua F. Ernst, a married woman, lived in Nebraska when the note in suit, for $1,320, was executed, and appeals from a judgment thereon. The note was dated "Alexandria, South Dakota, September 12th, 1923," "Payable at the First National Bank, Alexandria, South Dakota," to "The First National Bank *of* Alexandria, South Dakota." The note was indorsed: "Pay to the order of the First National Bank *in* Alexandria, S. D. Without recourse. Paul C. Keyes, Receiver of the First National Bank *of* Alexandria, S. D." The plaintiff bank will be referred to as the "in" bank, and the First National Bank *of* Alexandria as the "of" bank.

The "of" bank having become insolvent, its receiver sold the note to the "in" bank on January 30, 1925, after its maturity.

Mrs. Ernst pleaded coverture as one defense, claiming the note was a Nebraska contract; on and since September 12, 1922, at which time she gave a note of which the one in suit was a renewal, she has been living with her husband, a resident citizen, in Nebraska; the September 12, 1923, renewal note was obtained by Frank D. Peckham, president of the "of" bank, from her in Nebraska where it was actually executed in his presence, under an express agreement that the rights of the parties to the note "should be governed by the laws of Nebraska;" that no judgment would be asked against her thereon; that her separate estate would never be charged with payment, and that the note was so accepted by Peckham for the "of" bank. Her husband gave the first note for his individual debt of long standing, and, after he signed it, Peckham induced her to sign it, through trickery, deceit and fraud, and promised her the "of" bank would hold and not dispose of it; that no judgment would be taken against her; her property would not be charged with its payment; he desired her sig-

nature as a matter of form to get the bank examiner's approval; her signature was not asked as a maker, and the "of" bank would look to her husband only for payment. Then follows the usual allegations of reliance; of no consideration; the notes did not concern her property or business, were not given with reference to, upon the faith or credit of, or with intent to bind her estate; her husband received the sole consideration, and the "in" bank took the note in suit, after due.

Plaintiff alleged in reply: Rua F. Ernst was married; the note was "made, executed and delivered to the plaintiff by defendants *at Alexandria*, South Dakota;" the note was a "South Dakota contract," and it "was to be governed" by "certain sections of the Code of that state."

Neither note contained a clause concerning Mrs. Ernst's liability as a married woman, intent to bind, or that it was in reference to, her estate or business.

Section 1510, Comp. St. 1922, moderates the incompetency of a married woman to contract only to the extent that she "may bargain, sell and convey her real and personal property, and *enter* into any *contract* with *reference* to the same in the same manner, to the same extent * * * as a married man may." Section 1511, Comp. St. 1922, relates to her separate trade or business. There is no pretense that either note originated with her trade or business.

In *Farm Mortgage & Loan Co. v. Beale*, 113 Neb. 293, it is said: "The statute has removed the common-law disability of a married woman to make contracts only in cases where the contract made has reference to her separate property, trade, or business, or was made on the faith or credit thereof, and with the intent on her part to thereby bind her separate property. *Hale v. Christy*, 8 Neb. 264; *Godfrey v. Megahan*, 38 Neb. 748; *Grand Island Banking Co. v. Wright*, 53 Neb. 574; *Smith v. Bond*, 56 Neb. 529; *Farmers Bank v. Boyd*, 67 Neb. 497; *Northwall Co. v. Osgood*, 80 Neb. 764; *Marsh v. Marsh*, 92 Neb. 189." Such intent is not presumed. It must be proved by the promisee.

The evidence is conclusive that Mr. and Mrs. Ernst

signed and delivered both notes in Nebraska, the first one
to Mr. Peckham in person, and the one in suit to the post
office establishment of the United States. Mrs. Ernst knew
nothing about the laws of South Dakota and, of course,
had no intention concerning them. She testified, over ob-
jection, she intended that the Nebraska laws should govern.
Where intent is a direct issue in a case, it is competent
for the doer to state his own mind, as he knows more about
it than any one else. *Hackney v. Raymond Bros. Clarke
Co.,* 68 Neb. 624, 632; *McCormick Harvesting Machine Co.
v. Hiatt,* 4 Neb. (Unof.) 587; *Beach v. Beach,* 160 Ia. 346;
*Preger v. Barnett,* 175 Mich. 494; *Edwards v. Svea Fire &
Life Ins. Co.,* 141 Minn. 285; *Chambers v. Chambers,* 227
Mo. 262, 282; *Eckerd v. Weve,* 85 Kan. 752, 758.

The main question in this case is: Where was the note in
suit executed and delivered, and with what intent?

While the writer entertains doubt as to some of the state-
ments in the opinion in *Farm Mortgage & Loan Co. v.
Beale,* 113 Neb. 293, the conclusion there reached was a
proper one under the facts. Mrs. Beale signed the note in
Nebraska. It was dated and made payable in Kansas City,
Missouri. The facts and circumstances indicate, very
strongly, that the note was delivered in Missouri, and it
became a contract where it became effective by delivery.

In *McElroy v. Metropolitan Life Ins. Co.,* 84 Neb. 866,
the rule is stated that, where parties to a contract "are in
different jurisdictions, the place where the last act is done
which is necessary to the validity of the contract is the
place where the contract is entered into."

Upon the trial of the instant case, counsel for Mrs. Ernst
offered to prove that, at the time the first note (which was
renewed by the note in suit) was executed, one of the
executive officers of the "of" bank was present at her
home in Nebraska, transacting the business for the bank;
that, before she would sign the note, it was agreed
that she should not be bound for the payment thereof;
the note would be governed by the Nebraska laws, and,
by signing the note, she would not bind her separate estate

for its payment. The trial court. erroneously rejected the offer.

It has been so many times held in this state that "intent" is the foundation of a married woman's liability, as surety only, and such intent may be shown by parol, it is not necessary to cite authorities on that question.

*International Harvester Co. v. McAdam,* 142 Wis. 114; *McElroy v. Metropolitan Life Ins. Co.,* 84 Neb. 866; *Union Nat. Bank v. Chapman,* 169 N. Y. 538, 57 L. R. A. 513; *Dulin v. McCaw,* 39 W. Va. 721; *Scudder v. Union Nat. Bank,* 91 U. S. 406; 5 R. C. L. 935, sec. 26; *Frasier v. Charleston & W. C. R. Co.,* 73 S. Car. 140; *Garrigue v. Kellar,* 164 Ind. 676; *Glenny Glass Co. v. Taylor,* 99 Ky. 24; *Burr v. Beckler,* 264 Ill. 230, L. R. A. 1916A, 1049; *Baxter Nat. Bank v. Talbot,* 154 Mass. 213, 13 L. R. A. 52, 55, all more or less directly hold that the place where a contract is consummated, *i. e.,* the place where the last act is done which is necessary to put the contract into effect, governs as to the capacity of the parties to contract, and that such rule of law applies to married women.

It is the law that, when a person in one state sends a contract by mail to a person in another state to be executed and returned to the sender, the sender makes the post office establishment of the United States his agent, and a deposit of the signed contract, by the receiver, in the post office, in an envelope properly stamped and addressed to the sender, completes the contract without further ado. *Burton v. United States,* 202 U. S. 344; *Patrick v. Bowman,* 149 U. S. 411, 424; 13 C. J. 300, secs. 115-121.

This court has many times held that married women's disabilities to contract are not entirely abrogated; that they can contract only in reference to their separate estate, trade, or business, or upon the faith and credit of their separate estate with intent to bind the same; that there is no presumption of such interest merely because they sign contracts; when coverture is pleaded as a defense, the burden is upon the plaintiff to establish such intent, and that "all other engagements and obligations are void." *Grand Is-*

land Banking Co. v. Wright, 53 Neb. 574; Stenger Benevolent Ass'n v. Stenger, 54 Neb. 427; First Nat. Bank v. Grosshans, 54 Neb. 773; State Nat. Bank v. Smith, 55 Neb. 54; Westervelt v. Baker, 56 Neb. 63; Smith v. Bond, 56 Neb. 529; Farmers Bank v. Boyd, 67 Neb. 497; Farm Mortgage & Loan Co. v. Beale, 113 Neb. 293, and many other cases.

While the Beale case, last cited, may seem to run counter to some of the principles hereinbefore stated, it can be said that is more apparent than real. We have examined the facts and briefs in that case with some care, and it is easily distinguished. There was nothing in that case to show where the note was delivered after Mrs. Beale signed it in Nebraska. The note was given to a Kansas City corporation, transacting and having its place of business in that city, to close a contract with Mrs. Beale's husband for Texas land which he purchased from the corporation. The note was dated and made payable in Kansas City, at the office of the corporation. There was no proof that any agent or officer of the corporation was present and accepted the note in Nebraska when Mrs. Beale signed it, nor that it was sent to her by mail and by her returned through that agency. It is reasonable to suppose, and is highly probable, that the note was delivered in Kansas City when the contract for the Texas land was finally executed.

The case before us is altogether different. Although the note signed by Mrs. Ernst was dated and payable in South Dakota, it was delivered in Nebraska, with the knowledge of the "of" bank that she was a married woman and a mere surety for her husband's debt. The note was a renewal of a prior note. She testified when she signed the first note and gave it to an officer of the "of" bank, they were both in Nebraska, and she knew nothing about the laws of South Dakota and did not intend to bind her estate. The officer testified he had difficulty in getting her to sign it at all. When she signed the renewal note, there was no new consideration or different intent than when she

signed the first note, so far as shown by the record. No part of the business transacted by her with the bank, concerning either note, took place elsewhere than in Nebraska. Plaintiff alleged, without attempting to prove, she expressly agreed she intended to bind her estate. The officer of the "of" bank frankly testified that, when he procured the first note, he agreed the "of" bank would not sell or dispose of the note. Mrs. Ernst offered to prove it was agreed she was not to bind her estate and her signing the note would be a mere formality and she would never be asked to pay it. This offer was erroneously rejected. As against all of that, the note was dated and payable in South Dakota—nothing else.

All of this falls far short of showing any intent on the part of Mrs. Ernst to bind her estate. Had the court received her testimony as to the conversation between her and the officers of the "of" bank when he procured the first note, it would have clearly and positively appeared that there was an express intent not to do so. As Mrs. Ernst had a complete defense to the first note (if what she testified to is true, and certainly if she had been permitted to testify according to the offer and that was true), she had a defense to the renewal note unless some new and additional consideration passed, when it was executed, or unless she gave the new note with an express agreement that it should constitute payment of the other. *Auld v. Walker,* 107 Neb. 676; *Berwyn State Bank v. Swanson,* 111 Neb. 141; *May v. First Nat. Bank,* 74 Neb. 251.

Much has been said in the briefs about the effect of a purchaser of accommodation paper. We do not think that question is necessarily in this case. We think the evidence in the case, as it now stands in this court, is sufficient to have justified the trial court in directing a verdict in favor of Mrs. Ernst, without being supplemented by the offered testimony; but, as we have no means of questioning what new evidence may be available on another trial, the judgment of the lower court is reversed and the cause remanded

to the district court for further proceedings in conformity with this opinion.

REVERSED.

GOOD, J., dissents from rule stated in the third paragraph of syllabus.