# J. S. GREEN v. NORTHWESTERN TRUST COMPANY and Another.[1]

December 18, 1914.

Nos. 18,999—(27).

**Appeal and error — no reversal for exclusion of evidence, when.**
    1. Though the trial court in an equity case erroneously excludes testimony

[1] Reported in 150 N. W. 229.

Note.—The authorities on the presumption as to law of other state as to usury are gathered in notes in 21 L.R.A. 471 and 67 L.R.A. 60.

bearing upon material facts in issue, and rejects offers to prove them, the case will not be reversed for such errors if, with the facts taken as the party offering the proof claims them to be, there could be no result in the case other than that reached by the trial court.

**Usury — presumption of legality, when.**

2. Where notes are claimed to be usurious, and there is no expressed or actual intent as to whether the governing law of the transaction is the law of one state or another, to either of which it may with propriety be referred in part, and there is no attempt to evade the usury law, the court will indulge the presumption that the law of the state which upholds the transaction is the law intended by the parties; and applying this rule it is *held* that the law of Montana, under which the transaction involved was valid, was the proper law of the contract where purchase money notes were made to a corporation of that state, secured on lands located there, sold to a South Dakota corporation, having an office in Minnesota, under the laws of which the transaction was invalid, though the negotiations were had in Minnesota, and the notes executed and payable there, and the trust deed securing them executed there to a Minnesota trust company as trustee.

Action in the district court for Ramsey county to restrain defendant land company from paying to the Northwestern Trust Co. and the trust company from receiving from the land company any interest upon the land company's indebtedness, and to restrain the trust company from instituting proceedings to foreclose a mortgage given by the land company to the trust company to secure the payment of certain notes and interest. The case was tried before Kelly, J., who made findings and ordered judgment in favor of defendants. From an order denying plaintiff's motion for a new trial, he appealed. Affirmed.

*Harris Richardson* and *Walter Richardson,* for appellant.

*Butler & Mitchell,* for respondent.

DIBELL, C.

This action was brought by the plaintiff, a stockholder in the Cartersville Irrigated Land Co. against that company and the Northwestern Trust Co. to enjoin the Cartersville company from paying and the trust company from receiving interest upon certain notes made by the Cartersville company to the Rosebud Land &

Improvement Co., secured by a purchase money mortgage in the form of a trust deed made by the Cartersville company to the trust company as trustee, and to enjoin the trust company from proceeding to enforce the mortgage. There were findings for the defendants and the plaintiff appeals from an order denying his motion for a new trial.

1. On November 23, 1911, the Rosebud Co. and the plaintiff Green entered into a contract for the sale of certain Montana lands, the contract setting forth the agreement in detail. This contract Green assigned to the Cartersville Co. on December 6, 1911. On December 20, 1911, the Rosebud Co. conveyed the lands to the Cartersville Company.

During the summer of 1911 negotiations were had in Montana between the Rosebud Co. and Green relative to the disposition of these lands. The Rosebud Co. claimed that these negotiations had reference to a sale to Green and that they resulted in the conveyance to the Cartersville Co. Green claimed that he was acting as agent for the Rosebud Co.; that if he made a sale he was to have a commission; that the contract of November 23, 1911, which was acknowledged by the company on November 18, was executed for the purpose of enabling him to dispose of the lands to certain Minneapolis people; that these people did not complete the proposed purchase; that he then associated himself with other parties, with whom he was to have a joint interest, and that the contract was delivered to him by the Rosebud Co. as a matter of convenience in completing this transaction; and that the negotiations with reference to this transaction, which was completed when the conveyance to the Cartersville Co. was made, were had in Minnesota.

The real question in the case being whether the transaction was governed by the Minnesota law or by the Montana law, as is explained hereafter, the inquiry as to the nature and place of these negotiations was important. The court found that Green was not the agent of the Rosebud Company. There was evidence that he was and that he was not. The court sustained objections to pertinent questions put by plaintiff's counsel upon the issue, and sustained objections to plaintiff's offers to prove the facts as he claimed them to be, both as to

Green's agency and as to the negotiations culminating in the deed to the Cartersville Co. In this the court erred. Ordinarily such an error, infecting as it did material facts in issue, results in a new trial. If, however, from the facts properly found, and the other facts found as the plaintiff claims them to be, including the facts in proof of which evidence was rejected, there could be but one result, and that the one reached by the trial court, a new trial should not be had; that is, if from the facts properly found, and the other facts taken to be as the plaintiff claims them, the law declares the transaction a valid one, a new trial is unnecessary. This is such a case. Therefore, in reciting the facts, additional to those properly found, they are assumed to be as the plaintiff by his rejected proofs offered to show them.

2. The ultimate question, upon which the rights of the parties depend, is whether the Montana law or the Minnesota law is the governing law of the transaction brought in question.

The facts, as we have them for the purposes of this appeal, are not in controversy and are not complicated.

The Rosebud Co. is a Montana corporation. It has no office elsewhere. Its officers and stockholders reside in Montana. The plaintiff Green is a resident of Montana. The trust company is a Minnesota corporation. The Cartersville Co. is a South Dakota corporation, organized there in December, 1911. It does business and has its principal office in Minneapolis, though it did not obtain the required license until after the transactions here involved. Its connection with the state of its birth has never been more than nominal.

On November 23, 1911, the Rosebud Co. and the plaintiff Green entered into a contract of sale of certain Montana lands, the contract before mentioned. This contract was executed in Montana by the Rosebud Co. and was delivered by its president J. E. Edwards to Green at Minneapolis and was by the latter signed there. It was then returned to Montana. It was delivered as the result of negotiations had in Minnesota. It was originally executed for use in a sale attempted by Green as agent of the Rosebud Co., which was not completed. One C. H. Wagner and one W. O. Williams were interested with Green in this contract. This the Rosebud Co. knew.

128 M.—3.

It was at the time contemplated by Green and his associates that a corporation would be organized to take over the lands included in the contract. The Cartersville Co. was organzied under the laws of South Dakota for this purpose. Green, Wagner and Williams, together with a resident of South Dakota, were its incorporators.

The contract of November 23, 1911, contained this provision relative to the trust deed:

"Said trust deed or mortgage, trust deeds or mortgages, executed in conformity with the terms hereof, in other respects to contain such terms and provisions as are ordinarily contained in like indentures and instruments within the state of Montana, and to be in such form as the party of the first part shall desire and elect at the time of the execution thereof."

On December 6, 1911, Green made a formal assignment of the contract to the Cartersville Company. On December 20, 1911, the Rosebud Co. deeded the Montana lands to the Cartersville Company. Edwards, the president of the Rosebud Co., executed the deed in Minnesota and delivered it. It was attested by Beattie, the secretary of the company, and the corporate seal attached, apparently in Montana.

On December 20, 1911, the Cartersville Co. executed and delivered to the trust company a mortgage in the form of a trust deed to secure the promissory notes representing the unpaid purchase price. The notes ran to the Rosebud Co. They were delivered to Edwards at Minneapolis and by him given to the Rosebud Co. in Montana. Of the purchase price $25,000 was paid in cash or in notes accepted in lieu of cash. The balance of the purchase price was represented by notes. One note for the sum of $25,000 was payable on January 1, 1913, and one for $772.21 and one hundred and sixty-three for $1,000 each were payable on January 1, 1918. The amount secured by the trust deed was $188,772.20. These notes drew interest at the rate of six per cent per annum, payable annually, and the usual coupons were attached. The notes contained this provision:

"And it is agreed that any unpaid principal or interest after the same becomes due shall bear interest at the rate of eight per cent. per annum, payable annually."

The coupons contained this provision:

"This coupon note bears interest at the rate of eight per cent. per annum after maturity."

The Minnesota statute provides as follows:

"Contracts shall bear the same rate of interest after they become due as before, and any provision in any contract, note, or instrument providing for an increase of the rate of interest after maturity, or any increase therein after making and delivery, shall work a forfeiture of the entire interest; but this provision shall not apply to notes or contracts which bear no interest before maturity." G. S. 1913, § 5805. (R. L. 1905, § 2733.)

The provision for an increase of interest after maturity is valid under the Montana law. Its effect under the Minnesota law is to forfeit all interest reserved. Chase v. Whitten, 62 Minn. 498, 65 N. W. 84.

Under the facts recited the question is whether these notes are governed by the Montana law and are valid, or whether they are governed by the Minnesota law and are so far invalid as to result in a forfeiture of the interest.

If the intent of the parties is expressed, or an actual intent is found, either that the Minnesota law govern, or that the Montana law govern, such intent must be given effect. If the intent is not expressed or an actual intent found, the court must find the presumed intent and such presumed intent then fixes the governing law.

In Dicey, Conflict of Laws, pp. 560, 561, these rules are stated:

"When the intention of the parties to a contract, as to the law governing the contract, is expressed in words, this expressed intention determines the proper law of the contract and, in general, overrides every presumption.

"When the intention of the parties to a contract with regard to the law governing the contract is not expressed in words, their intention is to be inferred from the terms and nature of the contract, and from the general circumstances of the case, and such inferred intention determines the proper law of the contract."

In this case no intent was expressed. Neither, as we shall see,

can an actual intent that the Minnesota law, or the Montana law, govern be found.

In a search for the actual intent of the parties when none is expressed, there is an element of legal jugglery. Usually parties to transactions of this nature, referable to one state or another, or in part to one state and in part to another, have no unexpressed but actual intent as to the law which shall control. The question of what law governs does not suggest itself to them. Why should it? They engage in a transaction from which each hopes to profit, intending that it will be carried out as agreed. In looking at the case before us it is evident that the Cartersville Co. could not have had, consistently with an honest purpose, when it made the mortgage and notes aggregating $188,772.21, evidencing deferred payments on land for which it had made an initial payment of but $25,000, all of the deferred payments, except $25,000, running for six years, an actual intent that the interest reserved, aggregating upwards of $60,000, need not be paid; and it is evident that the Rosebud Co. could not have intended, consistently with ordinary business sagacity, when it received the notes, that none of the interest promised it need be paid; and it is evident that the trust company, acting in a trust capacity, could not have intended taking a deed of trust, securing notes payable to the beneficiary of the deed, on which, contrary to their terms, no interest need be paid.

The suggestion is not that a transaction is free of usury because the parties to it do not know that there is a usury law. The contrary is true. If they contract for forbidden interest, though without moral wrong, not knowing that there is a usury law to violate, they are subject to the penalties of usury. 29 Am. & Eng. Enc. (2d ed.) 464. But when the circumstances determinative of the governing law are equivocal and the determination of what the governing law is must be made by resorting to the presumed intent of the parties as to what law shall govern—that of one state which leaves the transaction valid or that of the other which makes it usurious and illegal—a strong presumption is indulged that the intent was to contract with reference to the law of the state where the transaction is valid; and the presumption in a particular case may be conclusive.

It is competent for the parties to select any state, provided the transaction is referable in part to that state as the one having the governing law, if this is done without an intent to evade the usury law. "It is doubtless essential to the application of this principle that one or more of the important elements of the contract, or significant circumstances of the transaction, shall have had their situs at the place whose law would uphold the contract." 2 Wharton, Conflict of Laws (3d ed.), p. 1200. The parties cannot arbitrarily assign their contract to a particular state. American Freehold Land & Mtg. Co. v. Jefferson, 69 Miss. 770, 12 South. 464, 30 Am. St. 587. Effect can be given to the presumed intention that the law of a particular state shall be the governing law only when such state has a vital connection with the transaction; or where elements of the contract, important in determining the governing law, have their situs in such state. 39 Cyc. 899; 2 Wharton, Conflict of Laws, (3d ed.) p. 1198, et seq.

The transaction here in question was vitally related to Montana. The Rosebud Co. was a resident of Montana. So were its officers and stockholders. The plaintiff, who was the vendee in the contract of November 23, 1911, and a promoter and incorporator and a large stockholder of the Cartersville Co., resided there. The contract of sale was signed there, and was returned there, though originally intended for a different transaction. The land conveyed was there. The mortgage was drafted there. It was for unpaid purchase money and was secured upon lands located there. The notes were negotiable in Montana and non-negotiable in Minnesota. The Cartersville Co. covenanted in the trust deed to pay the taxes and assessments levied in Montana, including irrigation taxes. It had the right by the trust deed to sell portions of the mortgaged lands at not less than specified prices, and upon payment of a certain percentage of the price received was entitled to a release of the mortgage as to the lands sold. It covenanted to keep the buildings, fences, ditches and other improvements on the Montana lands in repair. It was contemplated by the November contract that the mortgage should contain, as it did, clauses usual to Montana

mortgages.    The connection between the transaction here involved and Montana was not artificial.

Opposed to the claim that the presumed intent was that the law of Montana should be the governing law, and supporting the contention that the Minnesota law should be presumed to be intended to be the governing law, these considerations are urged: The notes were signed, delivered and payable in Minnesota.    The trust deed, and the deed of the lands except as to the signature of the secretary, were executed here.    Both were delivered here.    The mortgagee was a corporation of this state.    The mortgagor had its principal office in Minnesota.    All of the negotiations relative to the transaction were had in Minnesota.

There was no intent to evade the usury law.    The Cartersville Co., the Rosebud Co., and the Trust company, had no thought of engaging in other than a lawful and honest transaction.    Indeed, there was no greed for interest.    If the notes had provided for interest at 8 or 10 per cent. from the beginning, instead of an advance from six to eight per cent. on principal and interest in default, more interest would have been received and the Minnesota law would not have been offended.

The courts go far in giving effect to the presumption that the parties intended their contract to be performed in the state where it could be validily performed according to its terms, rather than in a state where it would be wholly or in part invalid.    Thus, in Mott v. Rowland, 85 Mich. 561, 48 N. W. 638, the court said:

"It cannot be presumed that the parties intended to enter into an illegal contract.    The presumption is rather in favor of its validity.    The law will presume an honest intention, unless there is something in the nature of the transaction or in the proofs to establish the contrary."

In Hieronymus v. New York, N. B. & L. Assn. 101 Fed. 12, affirmed in 107 Fed. 1005, 46 C. C. A. 684, the court said:

"And it is well settled by the decisions of the United States supreme court that a contract is governed by the law with a view to which it is made; and it is to be presumed, in the absence of any

express declaration or controlling circumstances to the contrary, that the parties had in contemplation a law according to which their contract would be upheld, rather than one by which it would be defeated."

Other cases, valuable because of their statement or discussion of the principle, but not cited because parallel in their facts, are the following: Miller v. Tiffany, 1 Wall. 298, 17 L. ed. 540; New England &c. Co. v. Vader, 28 Fed. 265, 270; Newman v. Kershaw, 10 Wis. 275; Jackson v. American Mtg. Co. 88 Ga. 756, 15 S. E. 812; Whitlock v. Cohn, 72 Ark. 83, 80 S. W. 141; Chapman v. Robertson, 6 Paige, 627, 31 Am. Dec. 264; Cromwell v. Sac County, 96 U. S. 51, 24 L. ed. 681; United States Savings & Loan Co. v. Shain, 8 N. D. 136, 77 N. W. 1006. And see 22 Am. & Eng. Enc. (2d ed.) 1330; 39 Cyc. 899; 2 Wharton, Conflict of Laws (3d ed.) § 510g.

There is nothing in Finnes v. Selover, Bates & Co. 102 Minn. 334, 113 N. W. 883; Walsh v. Selover, Bates & Co. 109 Minn. 136, 123 N. W. 291; or True v. Northern Pacific Ry. Co. 126 Minn. 72, 147 N. W. 948, at variance with the views expressed.

Applying the rules stated we hold that the law of Montana was the proper law of the contract, and that its law, under which the transaction involved is valid, is the governing law. Under the facts, putting them as favorably to the plaintiff as is possible, it would be intolerable to require or to permit the Cartersville Co. to disavow its assumed obligation to pay interest on the purchase money notes. The law will conclusively presume the Montana law to be the intended governing law.

Order affirmed.