[Nos. 12779, 12901.  *En Banc.*  August 11, 1915.]

WILLIAM R. CRAWFORD, *Plaintiff*, v. SEATTLE, RENTON & SOUTHERN RAILWAY COMPANY et al., *Defendants.*

AUGUSTUS S. PEABODY, *as Trustee etc., Respondents*, v. SCOTT CALHOUN et al., *Receivers etc., Appellants.*

PEABODY, HOUGHTELING & COMPANY, *Appellants*, v. SCOTT CALHOUN et al., *Receivers etc., Respondents.*[1]

CONTRACTS—WHAT LAW GOVERNS—CONFLICT OF LAWS—INTENT OF PARTIES—PRESUMPTION. Where a contract, the elements of which have their situs in different states, is silent with respect to the governing law, so far as express words are concerned, the intention of the parties controls, as inferred or presumed from the terms of the contract or circumstances attending the transaction; and if the contract be lawful in one state and unlawful in another, a lawful intent will be presumed if possible, and a construction adopted that will render the contract valid.

SAME—WHAT LAW GOVERNS—INTENT OF PARTIES—DETERMINATION. The technical making and required performance of a contract in one state is not controlling of the intention of the parties that the contract was made with reference to the laws of another state, where the elements of the contract had their situs in such other state, and the contract itself was silent as to the governing law.

USURY—WHAT LAW GOVERNS—CONFLICT OF LAWS—INTENT—PRESUMPTIONS. The law of this state, and not the law of Illinois, governs and determines the validity of railway bonds and a trust deed securing the same, which bonds provided for a rate of interest that was legal in this state but illegal under the laws of Illinois, where it appears that the railway company, a Washington corporation, had its only place of business in this state, and signed and acknowledged the trust deed and signed the bonds in this state, pursuant to a tentative agreement made in the state of Illinois, that the bonds were headed "State of Washington," indicating that they were Washington securities, that the purpose of the loan was to promote the company's railway business wholly in this state, and that the trust deed provided notice of a certain option to be published in this state as well as in Illinois, and for the appointment of a new trustee by the superior court of this state; since the elements of the contract, even if to be performed in Illinois, had a situs in this.

[1]Reported in 150 Pac. 1155.

state, and the contract being silent as to the intent of the parties respecting the governing law, it will be presumed that a legal contract was intended and such construction adopted as to render it valid.

SAME. The same would be true of contracts and notes executed by the railway company, whereby all the stock of the company was pledged as security for the note indebtedness and deposited with a trustee in the state of Illinois, the duties and obligations of the company and the terms of the contract, and circumstances attending the transaction being substantially the same as under the trust deed and bond contract.

Appeals from orders of the superior court for King county, Frater, J., entered March 13, 1915, determining the claims of creditors in proceedings to wind up the affairs of an insolvent corporation. Affirmed on the appeal of the receivers; reversed on the appeal of Peabody, Houghteling & Company.

*Harold Preston, Scott Calhoun,* and *Preston & Thorgrimson,* for appellants Calhoun *et al.*

*Peters & Powell* and *Higgins & Hughes* (*Hyman Zettler,* of counsel), for respondents Peabody *et al.*

*Will H. Thompson,* in proper person and as *amicus curiae.*

PARKER, J.—There are here involved two separate claims of creditors filed in the superior court for King county in the receivership proceedings of the Seattle, Renton and Southern Railway Company, an insolvent corporation, the affairs of which are being wound up in these proceedings.

The claim of Augustus S. Peabody, as trustee for the holders of the bonds of the railway company, is sought to be made a preferred claim against all of the property of the railway company, by virtue of a trust deed given to secure the payment of the bonds. While this claim is sought to be enforced in the receivership proceedings, the trustee seeks, in effect, the foreclosure of the trust deed as a mortgage, a sale of the property in the hands of the receivers, and the payment of his claim from the proceeds thereof in preference to all other creditors of the railway company.

The claim of Peabody, Houghteling & Company is that of a general creditor and rests upon notes evidencing a loan made by them to the railway company, which loan was secured by the pledging of all of the shares of the capital stock of the railway company by the owners thereof, William R. Crawford and John B. Berryman, as evidenced by collateral agreements executed by the railway company, Crawford, Berryman, Peabody Houghteling & Company, and Augustus S. Peabody, as trustee. These claims were separately heard and determined in the superior court. The claim of Augustus S. Peabody, as trustee under the bonds and trust deed securing them, was allowed by the superior court in full, including interest at the rate specified therein, as a preferred lien upon the property in the hands of the receivers. From the order entered so allowing this claim, the receivers have appealed.

The superior court allowed upon the claim of Peabody, Houghteling & Company only the amount of money they actually parted with in making the loan to the railway company upon its notes, and disallowed all claim for interest as provided for in the notes. From the order so entered upon this claim, Peabody, Houghteling & Company have appealed.

The principal defense made in the superior court by counsel for the receivers against the allowance of these claims, as it is also made here, is that the contracts upon which the claims are rested are usurious under the laws of Illinois, and that such contracts are referable to, and governed by, the laws of Illinois. The superior court rendered its decision as to each claim upon the theory that the contracts were referable to, and governed by, the laws of Illinois; that the interest provided for in the bonds, together with the bonus or discount reserved, was not in amount sufficient to make that transaction usurious under the laws of Illinois; but that the interest provided for in the notes, together with the bonus or discount reserved, was sufficient to make that transaction usurious under the laws of Illinois.

The highest rate of interest permitted to be contracted for under the laws of Illinois is seven per cent, and when any higher rate of interest is contracted for, with reference to the laws of that state, the whole of such interest so contracted for is forfeited and the lender is entitled to recover only the principal sum so loaned. The learned trial judge concluded that the interest contracted for in the bond transaction, including the bonus or discount reserved, did not exceed seven per cent, but that the interest so contracted for in the note transaction did exceed seven per cent.

We may concede for present purposes that the interest contracted for in the note transaction, together with the bonus or discount reserved, amounted to approximately eight per cent. The interest contracted for in the bond transaction did not in any event exceed seven and three-fourths per cent. The highest rate of interest permitted to be contracted for under the laws of Washington is twelve per cent. Rem. & Bal. Code, § 6251 (P. C. 263 § 3). The main question here for determination is, were these contracts made with reference to the laws of Illinois or the laws of Washington. If the former should be found controlling, it would then be necessary for us to deal with some additional questions. If the latter be found controlling, such fact will dispose of both claims in favor of Augustus S. Peabody, as trustee, and Peabody, Houghteling & Company.

The two appeals are presented here together in the same briefs and by the same counsel. The controlling facts relative to both claims, touching the question of whether the laws of Illinois or the laws of Washington are decisive of the question of usury, are not materially different as we view them. Indeed, counsel do not seem to seriously contend that there is any substantial difference so far as this question is concerned. We shall notice the facts, which are substantially the same as to each claim and which we regard as decisive of each. The Seattle, Renton and Southern Railway Company is a Washington corporation, having its

principal place of business during its entire existence in the city of Seattle. Until the appointment of receivers for it upon its becoming insolvent, it owned and operated a street and interurban electric railway wholly within King county, in this state. It never maintained any agency or place of business outside of this state. Peabody, Houghteling & Company are now, and were at all times here involved, a partnership with their place of business at Chicago. They are purchasers of and dealers in bonds and other securities. Augustus S. Peabody, one of the trustees named in the deed of trust here involved, is a member of the firm of Peabody, Houghteling & Company.

In January, 1908, William R. Crawford, the president of the railway company, went to Chicago for the purpose of negotiating a loan for the railway company in order to make necessary improvements and betterments of its property and refund its outstanding indebtedness. In February, 1908, he entered into a tentative agreement at Chicago, in behalf of the railway company, with Peabody, Houghteling & Company for a loan of a million dollars for the railway company, to be evidenced by bonds of the railway company and to be secured by a trust deed upon all the property of the railway company. We need not here notice in detail the terms of this tentative agreement, since they became merged in the final contract evidenced by the provisions of the trust deed and the bonds issued thereunder. The trust deed and bonds were accordingly prepared by Peabody, Houghteling & Company at Chicago and dated as of May 1, 1908. The trust deed was signed and acknowledged at Chicago by the trustees, First Trust & Savings Bank of Chicago and Augustus S. Peabody, on June 4, 1908. It was then forwarded by Peabody, Houghteling & Company together with $600,000 of the bonds, to the railway company at Seattle, Washington, where the trust deed was duly signed and acknowledged by the railway company on June 15, 1908, the railway company at the same time signing the bonds so forwarded to it, all in pur-

suance of resolution of the board of trustees of the railway company made in that behalf. The signed bonds and the trust deed were then forwarded to the trustees at Chicago, where the bonds were delivered by the trustees to Peabody, Houghteling & Company after they were identified by indorsement thereon by the trustees as being bonds secured by the trust deed, such indorsement being made as provided by the terms of the trust deed. Peabody, Houghteling & Company then paid the railway company for the bonds by sending direct to the railway company at Seattle, New York exchange amounting to $125,804.68; by paying and satisfying outstanding bonded indebtedness of the railway company which had been incurred by it in the course of its business, which indebtedness was evidenced by bonds then at Chicago; and by paying expenses incident to the examination of the railway company's property and the title thereto at Seattle, which became security for the loan under the provisions of the trust deed and the bonds. The remainder of the bonds here involved secured by the trust deed were thereafter signed, delivered and paid for in a similar manner.

We now notice the provisions of the trust deed and the bonds constituting the contract here involved, which we regard as shedding light upon the question of the intention of the parties as to whether they made this contract with reference to the laws of the state of Illinois or with reference to the laws of the state of Washington. The general purpose of the loan is recited in the trust deed as follows:

"Whereas, Said Company desires to borrow money for the transaction of its business and the exercise of its corporate rights and privileges, the refunding of its funded debt and the funding of its unsecured indebtedness, the construction of tracks and the equipment thereof, the extension and improvement of its lines, and for other lawful purposes of its incorporation, and is about to make and issue its first mortgage bonds, of the form, tenor and effect hereinafter set forth, to the aggregate amount of one million dollars."

The trust deed specifies the form in which the bonds shall issue, such form being embodied therein in full. By this provision and as issued, the bonds have a heading in large capital type as follows:

"UNITED STATES OF AMERICA
STATE OF WASHINGTON
"SEATTLE, RENTON AND SOUTHERN
RAILWAY COMPANY
"FIVE PER CENT, FIRST MORTGAGE GOLD
BONDS."

The printed filing form upon the back of the bonds is headed the same. The bonds are, by their terms, payable at Chicago. The bonds refer to the trust deed as security and the provisions thereof as affecting the rights of the bondholders as follows:

". . . to which Trust Deed or Mortgage reference is hereby expressly made for a particular description of the terms and conditions thereof on which the said bonds are issued and secured, for a description of the nature and extent of the security therefor and the rights of the bondholders with regard to such security."

The trust deed requires the railway company to furnish to Peabody, Houghteling & Company monthly sworn statements in detail showing the condition of the company's business and its property. The trust deed provides that the railway company may elect to pay the bonds before maturity and thereby acquires the right so to do. As a prerequisite to the exercise of this right, the railway company "shall publish a notice of its such election and of the date of proposed prepayment in a newspaper of general circulation published in the city of Chicago, state of Illinois, and in a similar newspaper published in the city of Seattle, state of Washington . . ." It is provided in the trust deed that, in the event of the resignation of the trustees, or the rendering of that office vacant for any cause so that there shall no longer be any person to act in that capacity under the trust deed,

"a new Trustee may be appointed upon the application of the holder or holders of one-eighth (⅛) in amount of said bonds then outstanding and unpaid, and upon notice to said company, by the superior court of King county, Washington." For our present purpose, we may regard Augustus S. Peabody as the sole acting trustee under the trust deed here involved.

It is well settled by the authorities that the parties to a contract may make the same with reference to the laws of any state or country and have their contractual rights governed thereby, provided only that such laws have a real and not a mere fictitious connection with the subject-matter of the transaction. It is enough to support this power to contract with reference to the laws of some particular state or country that some of the substantial elements of the contract have their situs in the state or country the laws of which the parties intend to control their rights under the contract. The intention of the parties in this respect may be evidenced by express words in the contract, or may be presumed from the facts and circumstances attending the making of the contract. 9 Cyc. 665, 666; 2 Wharton, Conflict of Laws (3d ed.), §§ 510b, 510c.

Of course, where the residence of all parties as well as every fact and circumstance attending the making of the contract are in one state, the contract is conclusively presumed to have been made with reference to the laws of that state, and the rights of the parties are governed accordingly. In such cases, and in cases of express provision in the contract evidencing the intention of the parties, there is no room for controversy as to their intention. It is where the contract is silent on that subject, so far as express words are concerned, and its elements in some substantial measure have their situs in different states, that the question of what law was intended by the parties to govern their rights thereunder often becomes a difficult one. There is seemingly great conflict in the decisions dealing with this question. Such

conflict, however, is probably more apparent than real and arises from the great number of varying circumstances attending the contracts involved in different cases. Indeed, so marked is this variation of circumstances with which the courts have been called upon to deal, that it seems quite impossible to formulate rules applicable alike to all cases. In 2 Wharton, Conflict of Laws (3d ed.), § 510c, the learned author observes:

"When the intention of the parties with respect to the governing law is not shown by the express language of their contract, it is necessary to infer or presume it from the terms of the contract in connection with the circumstances surrounding the transaction. These terms and circumstances are of such great variety, and susceptible to so many different combinations, that it is impossible to formulate any rules or set of rules for ascertaining the unexpressed intention of the parties that will cover every case. Each case must therefore depend, to a considerable extent, upon its own circumstances. Certain combinations of terms and circumstances, however, are of such frequent occurrence that they have become the basis of formulated principles or rules for ascertaining the bona fide intention of the parties. Each of these rules rests upon an inference or presumption as to the intention of the parties, drawn from one or more of the terms of the contract, or circumstances of the transaction. It is obvious, therefore, that it is not a hard and fast rule (like the rule, for instance, that the *lex rei sitae* determines the requisites of an acknowledgment of a deed of real property.), but yields to additional circumstances indicating an intention contrary to the inferred or presumed intention on which it rests. It follows, therefore, that these rules are merely prima facie, and that one may give way to another as additional circumstances appear, or that all may yield to circumstances which have never become the basis of a formulated rule, but which nevertheless rebut the presumptions upon which the formulated rules rest."

The problem here involved, as we view it, is to a considerable extent freed from its seeming involved nature when we are reminded that it is a question of fact rather than one of

law, and that all of the rules applicable thereto have to do
with presumptions of fact and not with presumptions of law;
since we are not dealing with a case where it can be said, as
a matter of law, that the parties intended the laws of any par-
ticular state to govern their contractual rights, as when all
the elements of the contract have their situs in one state.  It
would seem unnecessary to review the authorities here to show
that they regard the intent of the parties as paramount in con-
trolling the question of what law governs in cases of this
nature.  The following, among numerous authorities, are
worthy of notice as evidencing this main thought in that great
number of cases having to do with the intention of the parties,
other than expressed intention, and that intention which fol-
lows as a matter of law when all the elements of the contract
have their situs in one state.  In 5 R. C. L. 938, the learned
editors state the general rule, with numerous authorities cited
in support thereof, as follows:

"Fortunately the conflict between the various rules and
theories that have been stated is more apparent than real. The
majority of them can be reconciled by the application of an-
other rule, namely that the true test for the determination
of the proper law of a contract is the intent of the parties,
and this intent, whether express or implied, will always be
given effect  . . ."

See, also, *Mayer v. Roche*, 77 N. J. L. 681, 75 Atl. 235,
26 L. R. A. (N. S.) 763; *Richards v. Globe Bank*, 12 Wis.
773; *Wilson v. Lewiston Mill Co.*, 150 N. Y. 314, 44 N. E.
959, 55 Am. St. 680; *Jackson v. American Mortgage Co.*,
88 Ga. 756, 15 S. E. 812; 39 Cyc. 897; see note in 62 L. R.
A. 33.

If we are correct in assuming that this contract has the
situs of substantial portions of its elements both in Illinois
and in Washington, so as to enable the parties thereto to
make the same with reference to the laws of either state, then
there comes to our aid in our search for the intention of the
parties the presumption of lawful intent on their part in the

making of the contract, and also the rule that the contract will, if possible, be given that construction which will render it valid. In 2 Wharton, Conflict of Laws (3d ed.), § 507, after noting circumstances attending the making of contracts which point to the intent of the parties touching the governing law thereof, such as their residence, the place of making and performance of the contract, etc., where the question of usury is involved, the author says:

"More reasonable is the view maintained by Savigny, and substantially adopted by Mr. Parsons, that when there are two conflicting laws bearing on this point, that law will be adopted by which the validity of the obligation is best sustained. The applicability of a local law, it is argued, is based on the presumed consent of the parties; but parties cannot be presumed to consent to a local law by which their engagements would be made null."

In *Mott v. Rowland*, 85 Mich. 561, 48 N. W. 638, dealing with the question of usury, where the written obligation might have been made with reference to the laws of either of two different states, the court said:

"It cannot be presumed that the parties intended to enter into an illegal contract. The presumption is rather in favor of its validity. The law will presume an honest intention, unless there is something in the nature of the transaction or in the proofs to establish the contrary. Transactions of this kind were and are now common between citizens of the western and those of the eastern states. The parties had an undoubted right to adopt the law of either state, provided they did so in good faith."

In *Green v. Northwestern Trust Co.*, 128 Minn. 30, 150 N. W. 229, 231, dealing with the question of interest contracted for, which would be usurious under the laws of one state and not under another, and the contract evidencing the obligations might have been made with reference to the laws of either state, the court observed:

"When the circumstances determinative of the governing law are equivocal, and the determination of what the govern-

ing law is must be made by resorting to the presumed intent of the parties as to what law shall govern—that of one state which leaves the transaction valid or that of the other which makes it usurious and illegal—a strong presumption is indulged that the intent was to contract with reference to the law of the state where the transaction is valid; and the presumption in a particular case may be conclusive."

In *Commercial Bank v. Auze,* 74 Miss. 609, 21 South. 754, dealing with a similar question, the court said:

"A presumption will never be indulged that a contract is in violation of law when it is capable of any other reasonable construction."

In the text of 39 Cyc. 899, on the subject of usury, the rule is stated, with numerous cited authorities in support thereof, as follows:

"Every presumption is against an intention to violate the law. Therefore where the several elements of a contract have their *situs* in different states, if by the laws of one of the states the contract would be legal, but illegal by the laws of the others, then the parties will be presumed to have contracted with reference to the law of the place wherein the transaction would be valid rather than in view of the law by which the transaction is illegal, always providing there is no evidence of bad faith, or of any intention to evade the usury laws of the latter state."

In *Pritchard v. Norton,* 106 U. S. 124, 137, Justice Matthews, speaking for the United States supreme court touching the intention of the parties to a contract, not involving the question of usury, however, observed:

"Phillimore says (4 Int. Law, 469): 'It is always to be remembered that in obligations it is the will of the contracting parties, and not the law, which fixes the place of fulfillment— whether that place be fixed by *express words* or by *tacit implication*—as the place to the jurisdiction of which the contracting parties elect to submit themselves.'

"The same author concludes his discussion of the particular topic (4 Int. Law, § 654, pp. 470-471) as follows: 'As all the foregoing rules rest upon the presumption that the obligor

has voluntarily submitted himself to a particular local law, that presumption may be rebutted either by an express declaration to the contrary, or by the fact that the obligation is illegal by that particular law, though legal by another. The parties cannot be presumed to have contemplated a law which would defeat their engagements.'

"This rule, if universally applicable, which, perhaps it is not, though founded on the maxim, *Ut res magis valeat, quam pereat,* would be decisive of the present controversy, as conclusive of the question of the application of the law of Louisiana, by which alone the undertaking of the obligor can be upheld.

"At all events, it is a circumstance, highly persuasive in its character, of the presumed intention of the parties, and entitled to prevail, unless controlled by more expressed and positive proofs of a contrary intent."

It would seem, then, that where a contract might have been made by the parties thereto with reference to the laws of either one of two or more states, which contract is silent upon the subject of which laws shall govern the rights of the parties thereunder, so far as express language is concerned, and there is fair room for argument that it might have been made with reference to the laws of either state, the presumption of lawful intention on the part of the makers of the contract should be controlling and result in giving the contract that construction which will make it lawful rather than that which will make it unlawful. This court in *Pennsylvania Mortgage Inv. Co. v. Simms,* 16 Wash. 243, 47 Pac. 441, in harmony with this view, said:

"Elementary rules require that such a construction should be given to the contract as will give it force, rather than one which will make it of no effect;" though that case did not involve a question of conflict of laws.

Counsel for the receivers contend that this is wholly an Illinois contract because, as they insist, it was made there and performable there. Application of technical rules of law might lead to these conclusions; though there is, in the light of all the facts, fair argument to be made in support of the

view that the contract was partly made in Washington and at least some of its requirements were to be performed there, when we consider the provisions of the trust deed as well as the provisions of the bond. However, we do not think the technical making and required performance of the contract in Illinois is controlling of the intent of the parties, nor as to their right to make the contract with reference to the laws of Washington, in view of the elements of the contract having their situs in this state. We think this contract must be considered as evidenced not only by the bonds, but by the trust deed in connection therewith. The bonds make such reference to the provisions of the trust deed as to make this evident.

We then have the following facts pointing to an intention of the parties in the making of the contract to have their rights thereunder governed by the laws of the state of Washington: The railway company, the maker of the trust deed and bonds, is a Washington corporation with its only place of business within this state. It never maintained any place of business outside the state. It signed and acknowledged, and in that sense, executed the trust deed in the state of Washington. It signed, and in that sense, executed the bonds in the state of Washington. As recited in the trust deed, the purpose of the loan was to promote the business of the railway company, manifestly largely if not wholly in the state of Washington. The heading of the bonds, as well as the filing form indorsed thereon, recited, among other things, "STATE OF WASHINGTON," thus apparently identifying them as Washington securities. The railway company, by the terms of the trust deed, was to furnish data to Peabody, Houghteling & Company monthly touching the condition of its business here, evidently to the end that they might at all times be informed of the condition thereof. The contract in giving the railway company the right to pay the bonds before maturity at its election, provided that the election of such right should be exercised by publication in a newspaper in the state of Washington as well as in one in the

21—86 WASH.

state of Illinois. The trust deed also provided that, in the event of vacancy in the office of trustee with no one to perform the duties thereof, a trustee might be appointed by the superior court for King county, in this state.

We are not prepared to say to just what extent any one of these facts standing alone would influence our decision touching the intent of the parties here in question. But taking them all together, it seems quite clear to us that the contract is one that might have been made by the parties, referable to the laws of the state of Washington, and applying the presumption of lawful intention on the part of the makers of the contract, we are of the opinion that the scale is turned in favor of the view that the contract was in fact made with reference to the laws of this state. This view renders the contract valid, and we are quite clear is preferable to one which would render the contract void, as it would be if held to be referable to the laws of Illinois.

We have noticed the authorities with a view of ascertaining general principles applicable, rather than with a view of finding cases dealing with the same state of facts as we have here, since, as has been suggested, and as has been rendered evident by our search of the cases, each case must be determined largely upon its own facts. Expressions are found in the decisions, especially in the earlier ones, to the effect that a contract is enforcible by the laws of the state of its execution or by the law of the state of its performance, but such expressions are not without qualification. The decision of this court rendered in *Bank v. Doherty*, 42 Wash. 317, 84 Pac. 872, 114 Am. St. 123, 4 L. R. A. (N. S.) 1191, is of some interest in this connection. In that case the mortgage and note involved were both executed in the state of Montana, between residents of that state, the debt being payable there. While the contract was usurious under the laws of the state of Washington, where the mortgaged land was situated, it was not usurious under the laws of the state of Montana. The presumption that the contracting parties were intending to

act lawfully was manifestly of some weight, inducing the court to reach its conclusion that the contract was made with reference to the laws of the state of Montana, though that was probably not the controlling consideration. Our conclusion here reached is not out of harmony with the conclusion there reached.

We have stated, with reference to the bond transaction, only those facts which are in substance the same as the facts with reference to the later note transaction. The only substantial difference, so far as we have stated the facts, is that the later note transaction, instead of resting upon a trust deed, rests upon contracts entered into between the railway company, Peabody Houghteling & Company, Augustus S. Peabody, a member of that firm, as trustee, William R. Crawford and J. B. Berryman, owners of all the stock of the railway company; in pursuance of which contracts the notes were issued to and paid for by Peabody, Houghteling & Company in substantially the same manner as the bonds were issued and paid for. Under those contracts, all of the stock of the railway company, the same being owned by Crawford and Berryman, was pledged by them as security for the payment of the note indebtedness, the same being deposited with Augustus S. Peabody, as trustee, the contracts giving the trustee a voice in the affairs of the railway company in behalf of Peabody, Houghteling & Company to a certain extent, as if they were stockholders therein. The duties and the obligations of the railway company under those contracts were substantially of the same nature as under the trust deed and bond contract. The notes were signed by the railway company in the state of Washington, the company had the privilege of paying the notes before maturity, and, in the exercise of that privilege, were required to publish a notice of their election in a newspaper in the state of Washington, as well as in the state of Illinois, as in the bond contract. The office of trustee, should it become vacant and there be no one to perform the duties thereof, by the terms of that

contract could be filled by appointment by the superior court of King county, in this state.

We think these contracts and the notes issued in pursuance thereof contain as convincing evidence of the intent of the makers thereof to have made the same with reference to the laws of the state of Washington, as do the trust deed and bond contract. What has already been said in reference to the law of that contract is applicable to these contracts, and we are of the opinion that they were made by the parties thereto with reference to the laws of the state of Washington, where they are valid.

We conclude, therefore, that the order of the superior court allowing the claim of Augustus S. Peabody, trustee, upon the bonds in full, with interest as therein specified, should be affirmed, and that the order of the superior court allowing the claim of Peabody, Houghteling & Company, upon the notes should be set aside, with direction to enter an order allowing that claim in full, with interest as specified in the notes. It is so ordered, and that case is remanded to the superior court for further proceedings in accordance with our views herein expressed.

This disposition of the two causes renders it unnecessary for us to notice other questions raised in the briefs.

MORRIS, C. J., MOUNT, MAIN, HOLCOMB, ELLIS, FULLERTON, and CROW, JJ., concur.